**BROWN KWON & LAM LLP**
William Brown, Esq.
Angela Kwon, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5825
Fax: (718) 795-1642
wbrown@bkllawyers.com
akwon@bkllawyers.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SALMA BAHAA HUSSEIN, ALESSANDRA DARRIGO, and DANIELA ARIELLE DARRIGO,** *on behalf of themselves and others similarly situated*, | |
| **Plaintiffs,** | **Case No.:** |
| **- against -** | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **HOOTERS OF AMERICA, LLC d/b/a HOOTERS, FRESH MEADOWS WINGS LLC d/b/a HOOTERS, FARMINGDALE WINGS LLC d/b/a HOOTERS, and MARC PHANUEF,** | |
| **Defendants.** | |

Plaintiffs Salma Bahaa Hussein, Alessandra Darrigo, and Daniela Arielle Darrigo ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants Hooters of America LLC d/b/a Hooters, Fresh Meadows Wings LLC d/b/a Hooters, Farmingdale Wings LLC d/b/a Hooters, (collectively, "Corporate Defendants"), and Marc Phanuef (hereinafter,

"Individual Defendant," and together with Corporate Defendants, "Defendants") and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) misappropriated tips, (4) unlawful wage deductions, (5) liquidated damages, and (6) attorneys' fees and costs.

2.      Plaintiffs also bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6 §§ 190 *et seq.*, and Article 19 §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unpaid regular wages due to off-the-clock work, (4) misappropriated tips, (5) unlawful wage deductions, (6) uniform pay violations, (7) liquidated damages for the late payment of wages, (8) stautory penalties, (9) liquidated damages, and (10) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

4.      This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiffs*

#### *Salma Bahaa Hussein*

7.      Plaintiff Salma Bahaa Hussein is an adult who resides in Queens County, New York.

8.      Plaintiff Salma Bahaa Hussein was a covered employee within the meaning of the FLSA and NYLL.

9.      Plaintiff Salma Bahaa Hussein retained Brown, Kwon & Lam LLP to represent her in this action and has agreed to pay the firm a reasonable fee for its services.

#### *Alessandra Darrigo*

10.      Plaintiff Alessandra Darrigo is an adult who resides in Queens County, New York.

11.      Plaintiff Alessandra Darrigo is a covered employee within the meaning of the FLSA and NYLL.

12.      Plaintiff Alessandra Darrigo retained Brown, Kwon & Lam LLP to represent her in this action and have agreed to pay the firm a reasonable fee for its services.

#### *Daniela Arielle Darrigo*

13.      Plaintiff Daniela Arielle Darrigo is an adult who resides in Queens County, New York.

14.      Plaintiff Daniela Arielle Darrigo was a covered employee within the meaning of the FLSA and NYLL.

15.    Plaintiff Daniela Arielle Darrigo retained Brown, Kwon & Lam LLP to represent her in this action and has agreed to pay the firm a reasonable fee for its services.

***Defendants***

16.    At all relevant times, Defendants owned and operated an enterprise under the tradename "Hooters," a chain of restaurants famous for its chicken wings and waitresses.

17.    Hooters operates under two nationwide corporations. Hooters, Inc., based in Clearwater, Fl, primarily owns and operates Hooters restaurants in and around the Tampa Bay Area, and the Chicago Metropolitan Area.  Defendant Hooters of America LLC owns and franchises hundreds of Hooters restaurants across the United States, including the Hooters Restaurants in Fresh Meadow and Farmingdale, New York.

18.    Defendants Fresh Meadows Wings LLC and Farmingdale Wings LLC are franchisees which own and operate Hooters Restaurants located in Fresh Meadows, New York and Farmingdale, New York, respectively (hereinafter the "L.I. Hooters").

19.    At all relevant times, Fresh Meadows Wings LLC and Farmingdale Wings LLC operated the L.I. Hooters Restaurants as a single integrated enterprise. Namely, Defendants have a common business purpose, share common ownership and management, and have centralized control of labor relations.  At all relevant times, the L.I. Hooters operated under the same wage and hour policies.

20.    At all relevant times, Hooters of America LLC jointly employed Plaintiff, FLSA Collective Plaintiffs and Class Members.  Plaintiff was directly supervised by employees of Hooters of America LLC. Namely Hooters of America LLC Regional Manager, Dan Gadbois, maintained the authority to hire, fire and otherwise discipline employees.  Gadbois, while acting on behalf of Hooters of America LLC frequently visited the restaurant and directly supervised

employees, including Plaintiffs. Plaintiffs were further instructed to address any employment issues to Hooters of America LLC's centralized human resources department, and were provided with a Hooters employee handbook. In fact, Plaintiffs frequently complained to Hooters' human resources representatives regarding Defendants' unlawful wage and hour policies, and who had the power to address and correct such unlawful policies. Additionally, Hooters of America LLC imposed strict guidelines on its franchisees, including the L.I. Hooters, regarding the appearance and conduct of its waitresses and bartenders, and regularly performed inspections to ensure that the L.I. Hooters were meeting those standards.

21.     At all relevant times, Defendants jointly employed Plaintiffs and similarly situated employees.

22.     At all relevant times, each Defendant had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

23.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

*Hooters of America LLC*

24.     Corporate Defendant Hooters of America LLC is a foreign limited liability company organized under the laws of the State of Georgia with headquarters located at 1815 The Exchange SE, Atlanta, GA 30339 and an address for service of process located at CT Corporation System, 289 S Culver Street, Lawrenceville, GA 30046.

25.     At all relevant times, Corporate Defendant Hooters of America LLC had an annual dollar volume of sales in excess of $500,000.

26.    Corporate Defendant Hooters of America LLC is a covered "employer" within the meaning of the FLSA and NYLL.

27.    Corporate Defendant Hooters of America LLC employed Plaintiffs and similarly situated employees.

28.    At all relevant times, Corporate Defendant Hooters of America LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

29.    At all relevant times, Corporate Defendant Hooters of America LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the L.I. Hooters Restaurants.

### Fresh Meadows Wings LLC

30.    Corporate Defendant Fresh Meadows Wings LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 53-61 190th Street, Fresh Meadows, N.Y. 11365 and an address for service of process located at 2189 Silas Deane Highway, Rocky Hill, CT 06067.

31.    At all relevant times, Corporate Defendant Fresh Meadows Wings LLC franchised the Hooters located at 53-61 190th Street, Fresh Meadows, N.Y. 11365.

32.    At all relevant times, Corporate Defendant Fresh Meadows Wings LLC had an annual dollar volume of sales in excess of $500,000.

33.    Corporate Defendant Fresh Meadows Wings LLC is a covered "employer" within the meaning of the FLSA and NYLL.

34.    Corporate Defendant Fresh Meadows Wings LLC employed Plaintiffs and similarly situated employees.

35.     At all relevant times, Corporate Defendant Fresh Meadows Wings LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

36.     At all relevant times, Corporate Defendant Fresh Meadows Wings LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the L.I. Hooters Restaurants.

### *Farmingdale Wings LLC*

37.     Corporate Defendant Farmingdale Wings LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 25 Smith Street, Farmingdale, NY 11735 and an address for service of process located at 2189 Silas Deane Highway, Rocky Hill, CT 06067.

38.     At all relevant times, Corporate Defendant Farmingdale Wings LLC franchised the Hooters located at 25 Smith Street, Farmingdale, NY 11735.

39.     At all relevant times, Corporate Defendant Farmingdale Wings LLC had an annual dollar volume of sales in excess of $500,000.

40.     Corporate Defendant Farmingdale Wings LLC is a covered "employer" within the meaning of the FLSA and NYLL.

41.     Corporate Defendant Farmingdale Wings LLC employed Plaintiffs and similarly situated employees.

42.     At all relevant times, Corporate Defendant Farmingdale Wings LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

43.     At all relevant times, Corporate Defendant Farmingdale Wings LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the L.I. Hooters Restaurants.

**_Marc Phanuef_**

44.     At all relevant times, Individual Defendant Marc Phanuef was an owner and operator of the L.I. Hooters Restaurants.

45.     At all relevant times, Individual Defendant Marc Phanuef was a principal of Fresh Meadows Wings LLC and Farmingdale Wings LLC.

46.     Individual Defendant Marc Phanuef is a covered "employer" within the meaning of the FLSA and NYLL.

47.     Individual Defendant Marc Phanuef employed Plaintiffs and similarly situated employees.

48.     At all relevant times, Individual Defendant Marc Phanuef was directly involved in managing the day-to-day operations of the L.I. Hooters Restaurants. Individual Defendant Marc Phanuef regularly visited the L.I. Hooters Restaurants, supervised and instructed restaurant employees regarding their job duties, and ensured that the employees effectively serve the customers and that the business is operating efficiently and profitably.

49.     At all relevant times, Individual Defendant Marc Phanuef had authority over personnel or payroll decisions and employment policies, practices, and procedures at the L.I. Hooters Restaurants.

50.     At all relevant times, Individual Defendant Marc Phanuef had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and

conditions of their employment at the L.I. Hooters Restaurants, including their work assignments, work schedules, pay and responsibilities.

51.    At all relevant times, Individual Defendant Marc Phanuef had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at the L.I. Hooters Restaurants.

52.    At all relevant times, Plaintiffs and similarly situated employees at the L.I. Hooters Restaurants were able to speak to Individual Defendant Marc Phanuef if they had any issues, complaints or requests about the terms and conditions of their employment. Individual Defendant Marc Phanuef had the authority to make any changes to address such issues, complaints or requests by Plaintiffs and other employees.

53.    At all relevant times, Individual Defendant Marc Phanuef had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at the L.I. Hooters Restaurants.

54.    At all relevant times, Individual Defendant Marc Phanuef had the power to maintain employment records, including time and/or wage records of employees at the L.I. Hooters Restaurants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

55.    Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former non-exempt tipped employees employed at the L.I. Hooters Restaurants owned, operated, and/or controlled by Defendants, from the date that is three (3) years prior to the filing of the initial Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

56.     At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiffs and FLSA Collective Members the full minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek. Specifically, Defendants' improper deductions and requirement that employees pay for their uniforms caused their wages to fall below the statutory minimum wage. Further, Defendants unlawfully kept and/or allowed managers/supervisors to keep a portion of tips that Plaintiffs and FLSA Collective Members earned from customers. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

57.     All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

58.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

59.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

**<u>NEW YORK CLASS ACTION ALLEGATIONS</u>**

60.     Plaintiffs bring the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former non-exempt tipped employees employed at the L.I. Hooters Restaurants owned, operated, and/or controlled by

Defendants, from the date that is six (6) years prior to the filing of the initial Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

61.    Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

62.    The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

63.    The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

64.    Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

65.    Plaintiffs and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay minimum wage, (ii) failing to pay regular and overtime wages for off-the-clock work, (iii) unlawfully keeping or allowing managerial or supervisory employees

to keep a portion of tips, (iv) unlawfully deducting wages and tips, (v) unlawfully requiring employees to pay for required uniforms, (vi) failing to provide uniform maintenance pay, (vii) failing to timely pay wages, (viii) failing to provide proper wage notices, and (ix) failing to provide proper wage statements, in violation of the NYLL.

66.    Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

67.    Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

68.    Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members, and have no interests antagonistic to Class Members.

69.    Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

70.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are

small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

71.     On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

72.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

73.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

74.     Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

    a. Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

b.  Whether Defendants paid Plaintiffs and Class Members at the lawful minimum wage rate;

c.  Whether Defendants paid Plaintiffs and Class Members for all hours worked, including overtime hours;

d.  Whether Defendants took the proper amount of tip credit allowance from Plaintiffs and Class Members under the NYLL;

e.  Whether Defendants provided proper notice to Plaintiffs and Class Members that Defendants were taking a tip credit;

f.  Whether Defendants provided proper wage statements informing Plaintiffs and Class Members of the amount of tip credit taken for each pay period and other information required to be provided on wage statements;

g.  Whether Defendants kept weekly records of the amount of tip credit allowance claimed from Plaintiffs and Class Members;

h.  Whether Defendants required Plaintiffs and Class Members to perform non-tipped side work for more than two (2) hours or twenty percent (20%) of their workday;

i.  Whether Defendants kept accurate records of the amounts of tips earned by Plaintiffs and Class Members;

j.  Whether Defendants misappropriated tips from Plaintiffs and Class Members by keeping or distributing a portion of the tips to employees who are not entitled to receive tips under the NYLL;

k.  Whether Defendants unlawfully deducted the wages of Plaintiffs and Class Members by requiring them to pay Defendants for cash register shortages or property loss;

l.  Whether Defendants unlawfully required Plaintiffs and Class Members to purchase uniforms;

m.  Whether Defendants failed to provide required uniform maintenance pay;

n.  Whether Defendants timely paid Plaintiffs and Class Members;

o.  Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage notices, at hire and before a pay change, as required by the NYLL; and

p.  Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

75.    Plaintiff Salma Bahaa Hussein was employed by Defendants as a waitress at the Fresh Meadows Hooters restaurant from in or around October 2020 through October 4, 2023.

76.    From the start of her employment until around June 2022, Plaintiff Salma Bahaa Hussein worked the to-go counter three (3) days per week from around 12:00 p.m. until around 9:00 p.m. for a total of approximately twenty-seven (27) hours per week.  As a to-go counter worker, Plaintiff Hussein was paid $15.00 per hour.

77.    Starting around June 2022 until the termination of her employment, Plaintiff Salma Bahaa Hussein worked as a waitress three to six (3-6) days per week from 5:00 p.m. to one hour after closing, usually around 1:00 a.m.  As a waitress, Plaintiff was paid $10.00 per hour.

78.    Plaintiff Alessandra Darrigo was employed by Defendants as a waitress at the Fresh Meadows Hooters restaurant from in or around May 2021 through the present date.

79.    Throughout her employment with Defendants, Plaintiff Alessandra Darrigo worked one to two (1-2) days from 11:00 a.m. to 6:00 p.m., and was paid an hourly rate of $10.00.

80.    Plaintiff Daniela Arielle Darrigo was employed by Defendants as a waitress and bartender at the Fresh Meadow Hooters restaurant from in or around November 2016 through March 10, 2023.

81.    Up until March 2020, Plaintiff Daniela Arielle Darrigo generally worked five days per week, Thursday through Monday from 4:45 p.m. to one hour after closing, usually around 3:00 a.m.  During this period, Plaintiff worked upwards of fifty hours per week.  Thereafter, until the termination of her employment, Plaintiff Daniela Arielle Darrigo worked Friday through Monday. Friday, Saturday and Sunday Plaintiff worked the evening shift from 4:45 p.m. to closing, and on Mondays Plaintiff worked the afternoon shift from 10:00 a.m. to 5:00 p.m.  In 2018, Plaintiff was

paid an hourly rate of $8.65. Starting December 31, 2018 until the termination of her employment, Plaintiff was paid $10.00 per hour.

82.     During their employment with Defendants, Plaintiffs regularly observed and spoke to employees who came from the Farmingdale Hooters location to work at the Fresh Meadows location on a temporary or permanent basis. Similarly, Plaintiffs regularly observed and spoke to employees who were sent from the Fresh Meadows location to work at the Farmingdale location on a temporary or permanent basis.

83.     Based on Plaintiffs' observations and conversations with co-workers, Defendants applied the same pay policies and practices at the both the Fresh Meadows and Farmingdale Hooters restaurants.

84.     Based on Plaintiffs' observations and conversations with their co-workers at the L.I. Hooters Restaurants, FLSA Collective Members and Class Members worked hours similar to Plaintiffs' work hours.

85.     Based on Plaintiffs' observations and conversations with their co-workers at the L.I. Hooters Restaurants, Defendants claimed a tip credit and paid Plaintiffs, FLSA Collective Members and Class Members at the same or similar hourly rates that were at all times less than New York's minimum wage.

86.     Throughout Plaintiffs' employment with Defendants, Plaintiffs and their tipped co-workers regularly observed discrepancies and irregularities in Defendants' tip records and the tip amounts distributed to tipped workers. Plaintiffs recall instances when a portion of their tips went missing and the tip amounts listed on the wage statements were incorrect and different from the actual amounts of tips Plaintiffs received from Defendants. This often occurred when customers left very large tips. Plaintiffs would often complain about the discrepancies, and on rare occasions,

Defendants would pay additional sums in their next pay check. Cash tips were kept in an envelope and distributed the following day, and sometimes a number of days later. Plaintiffs noticed on multiple occasions that there were significant sums missing from the envelope.  At least one manager, was terminated for stealing tips.  The problem with missing tips became so pervasive, that Defendants instituted a policy whereby customers were prohibited from leaving tips in excess of $750, which was later reduced to $500.

87.    Throughout Plaintiffs' employment with Defendants, Defendants improperly deducted from Plaintiffs' tips and wages for comps to customers, customer who failed to pay their bill, and for missing cash from the register.  In addition, Defendants improperly deducted 2-3% of *total sales* from Plaintiffs' tips and wages.

88.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Defendants kept and/or allowed managers and supervisors to keep a portion of the tips that Plaintiffs and Class Members earned from customers.

89.    As a result of Defendants' invalid tip policies and practices, Plaintiffs and other tipped employees were not paid the full and proper tip amounts every week.

90.    Throughout Plaintiffs' employment with Defendants, Plaintiffs performed significant work off the clock for which they did not receive any compensation.  Namely, Plaintiffs were not permitted to clock themselves in or out.  Rather, a manager's card was required to operate the punch clock.  If a manager was not present, which was often the case at the start of the shift, Plaintiffs would be unable to clock-in and were thus forced to work off the clock.  When a manager did eventually arrive and clock employees in, Defendants failed to adjust the time records to account for the unpaid time.  Additionally, managers would prematurely clock employees out at the end of their shifts, usually about thirty minutes to an hour before Plaintiffs could leave for the

17

night.  Defendants would also require Plaintiffs to clock-out before changing their clothes at the end of their shifts.  On average, Plaintiffs worked at least one hour off the clock each work day. Based on Plaintiffs' observations, FLSA Collective Members and Class Members worked a similar amount of time off the clock, without compensation.

91.    Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay, as required under the NYLL.

92.    Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper wage statements from Defendants. Specifically, Defendants' wage statements that were provided to Plaintiffs did not state their correct pay rate or tip credit rate. Further, the amounts of tips listed on the wage statements were different from the amounts Plaintiffs earned each week.

93.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members the lawful minimum wage due to an invalid tip credit deduction.

94.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Plaintiffs, FLSA Collective Members and Class Members did not receive proper notice that Defendants were claiming a tip credit.

95.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Restaurants, Plaintiffs, FLSA Collective Members and Class Members did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

96.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Defendants failed to provide proper wage statements informing Plaintiffs, FLSA Collective Members and Class Members of the amount of tip credit taken for each pay period. In addition, the wage statements that Defendants provided to Plaintiffs, FLSA Collective Members and Class Members failed to state the accurate amounts of tips earned by tipped employees.

97.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Defendants failed to track daily tips earned by Plaintiffs, FLSA Collective Members and Class Members, and failed to keep accurate records thereof.

98.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Plaintiffs, FLSA Collective Members and Class Members were required to engage in more than two (2) hours and/or twenty percent (20%) of their workdays performing non-tipped side work, including pre-shift side work, running side work, and post-shift side work. Waitresses were required to arrive at the restaurant an hour before the restaurant opened to set up chairs, get ice buckets, set up the soda machine, set up garbage pails, retrieve syrups from the freezer, restock supplies, arrange silverware, and clean the restaurant.  Furthermore, at the end of the shift, waitresses would spend an additional one to one and a half hours after the restaurant closed to clean the tables, sweep the floors, fix the caddies, put chairs on the tables, and bring materials back to storage.  During shifts, waitresses would spend about an hour performing side work such as a retrieving supply.  Bartenders, including Plaintiff Daniela Arielle Darrigo would spend at least two hours per day performing untipped side work such as, restocking ice, cutting fruit and cleaning the bar area. Each day bartenders would arrive at least one hour before the start of their shift to set up, and would stay at least one hour after their shift to clean up.

99.    At all relevant times, Defendants required Plaintiffs, FLSA Collective Members and Class Members to purchase and maintain required uniforms which caused their net wages to fall below the New York State and Federal Minimum Wage.  Employees were only provided with their first two uniforms free of charge, after that, employees were required to purchase additional uniforms and replacement uniforms.  Front of the house staff were required to pay $35 for shirts and shorts, $45 for shoes and $4 for tights.  Each day Plaintiffs were subjected to a uniform inspection, and if any issues were noted with the uniform, including any stains or tears, employees would be required to purchase a new item.   This happened very frequently, as often as once per week.  Tights would need to be replaced daily as they were of poor quality and would tear very easily.  Furthermore, Plaintiffs were not provided with long sleeve uniforms in colder months and were required to purchase them for $8.00 each.  In addition, Plaintiffs would need to launder their uniforms on a regular basis, and were not provided with uniform maintenance pay.  The two initial uniforms provided were insufficient to cover the number of days worked each week.

100.    Throughout their employment, Plaintiffs' duties were primarily manual and non-clerical, including, but not limited to carrying and serving dishes, cleaning, and moving food and supplies.

101.    Up until around February 2023, Plaintiffs and Class Members were paid on a bi-weekly rather than a weekly basis.

102.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members their full wages for off-the-clock work.

103.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Defendants unlawfully deducted the wages of Plaintiffs, FLSA Collective

Members and Class Members by requiring them to pay Defendants for comps, cash register shortages or property loss.

104.    Based on Plaintiffs' observations and conversations with co-workers at the L.I. Hooters Restaurants, Defendants failed to provide proper wage notices to Plaintiffs and Class Members. The wage notices that were provided to Plaintiffs and Class Members failed to accurately reflect their regular pay rate and tip credit rate.

105.    Based on Plaintiff's observations and conversations with co-workers at the L.I. Hooters Restaurants, Defendants failed to provide proper wage statements to Plaintiffs and Class Members. The wage statements that were provided to Plaintiffs and Class Members failed to accurately reflect their regular pay rate and tip credit rate, and failed to state other required information. In addition, the wage statements that were provided to Plaintiffs and Class Members failed to reflect the accurate amounts of tips they earned each week.

106.    Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

107.    Defendants knowingly and willfully operated their business with a policy of failing to pay the full amount of wages for off-the-clock work to Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

108.    Defendants knowingly and willfully operated their business with a policy of keeping a portion of the tips that Plaintiffs, FLSA Collective Members and Class Members earned from customers and/or allowing a portion of the tips to be misappropriated by managers, supervisors or other employees who are not entitled to receive tips under the FLSA and NYLL.

109.     Defendants knowingly and willfully operated their business with a policy of unlawfully deducting the wages of Plaintiffs, FLSA Collective Members and Class Members by requiring them to pay Defendants for comps. cash register shortages or property loss, in violation of the FLSA and NYLL.

110.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

111.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### *Violations of the Fair Labor Standards Act*

112.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

113.     The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and FLSA Collective Members.

114.     Defendants failed to pay Plaintiffs and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

115.     Defendants unlawfully kept and/or allowed managerial or supervisory employees to keep a portion of tips that Plaintiffs and tipped FLSA Collective Members earned from customers. 29 C.F.R. § 531.52.

116.    Defendants failed to pay wages to Plaintiffs and FLSA Collective Members for off-the-clock work, in violation of the FLSA.

117.    Defendants unlawfully deducted the wages and tips of Plaintiffs and FLSA Collective Members by requiring them to pay Defendants for cash register shortages or property loss, and for required uniforms in violation of the FLSA.

118.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Members of their rights under the FLSA.

119.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Members the lawful minimum wage for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and FLSA Collective Members.

120.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

121.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and FLSA Collective Members have suffered damages by being denied minimum wage and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

122.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Members and the actual compensation paid to Plaintiffs and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by

appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## SECOND CAUSE OF ACTION
### *Violations of the New York Labor Law*

123.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

124.    At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

125.    Defendants failed to pay Plaintiffs and Class Members the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

126.    Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiffs and the Class the full minimum wage at a rate of (a) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (b) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (c) $9.00 per hour for all hours worked from December 31, 2015 through December 30, 2016; (d) $11.00 per hour for all hours worked from December 31, 2016 through December 30, 2017; (e) $13.00 per hour for all hours worked from December 31, 2017 through December 30, 2018; and (f) $15.00 per hour for all hours worked from December 31, 2018 through the present.

127.    Defendants have failed to notify Plaintiffs and Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

128.    Defendants required Plaintiffs and Class Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

129.    Defendants unlawfully retained and/or allowed managerial or supervisory employees to keep a part of the gratuities received by Plaintiffs and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

130.    Defendants failed to pay wages to Plaintiffs and Class Members for off-the-clock work, in violation of the NYLL.

131.    Defendants unlawfully deducted the wages and tips of Plaintiffs and Class Members by requiring them to pay Defendants for comps, cash register shortages or property loss, in violation of the NYLL.

132.    At all times, Defendants required Plaintiffs and the Class to wear a uniform for each work shift as a condition of their employment.

133.    Defendants improperly required Plaintiffs and the Class to purchase required uniforms.

134.    At all relevant times, Defendant does not and did not maintain required uniforms on behalf of Plaintiffs and the Class pursuant to the NYLL.  At all times, Defendant failed to compensate Plaintiffs and the Class with their uniform maintenance pay, in violation of the NYLL. Pursuant to the NYLL, the supporting New York State Department of Labor Regulations, the New York Hospitality Industry Wage Order, 12 N.Y.C.R.R., Part 146, Defendant is required to pay Plaintiffs and the Class a uniform maintenance pay as they were not provided with a sufficient number of uniforms consistent with the average number of days worked per week.

135.    At all times, Defendant did not launder or offer to launder Plaintiffs' or the Classes' required uniforms, did not ensure the availability of an adequate supply of clean, properly-fitting uniforms, and did not inform Plaintiffs and the Class of such a service in writing.

136.    Plaintiffs and the Class spent time off-the-clock and money to regularly clean and maintain their uniforms consistent with the uniform appearance standards required by Defendant.

137.    Defendants failed to furnish Plaintiffs and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

138.    Defendants failed to furnish Plaintiffs and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

139.    Pursuant to the NYLL, § 191(a)(i), and the supporting New York State Department of Labor Regulations, manual workers shall be paid weekly and not later than seven calendar days after the end of the week in which wages are earned.

140.    Plaintiffs and similarly situated employees spent well over 25% of their working time engaged in physical labor, and were at all times "manual workers," as defined by the NYLL.

141.    Up until around February 2023, Defendants failed to pay Plaintiffs and similarly situated employees on a weekly basis.

142.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiffs and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

143.    Defendants failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

144.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid wages for off-the-clock work, misappropriated tips, unlawfully deducted wages, uniform and uniform maintenance pay, liquidated damages for the late payment of wages, liquidated damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Members and the Class, respectfully request that this Court grant the following relief:

a.   Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.   Certification of this case as a class action pursuant to Rule 23;

c.   Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

d.   An award of unpaid minimum wage due under the FLSA and NYLL;

e.   An award of unpaid wages for off-the-clock work, due under the FLSA and NYLL;

f.   An award of unlawfully retained tips due under the FLSA and NYLL;

g.   An award of unlawfully deducted wages due under the FLSA and NYLL;

h.   An award of damages for unpaid uniform maintenance pay;

i.   An award of liquidated damages for the late payment of wages;

j.   An award of liquidated damages as a result of Defendants' willful failure to pay wages and misappropriated tips, pursuant to the FLSA or NYLL;

k.   Statutory penalties for Defendants' failure to provide Plaintiffs and Class Members with proper wage notices, as required by the NYLL;

l.   Statutory penalties for Defendants' failure to provide Plaintiffs and Class Members with proper wage statements, as required by the NYLL;

m.   Pre-judgment and post-judgment interest;

n.   Reasonable attorneys' fees and costs of this action;

o.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

p.   An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

q.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:  March 4, 2024

<div style="margin-left: 40%;">

Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:     */s/ William Brown*

William Brown, Esq.
Angela Kwon, Esq.
521 Fifth Avenue
New York, NY 10175
Tel.: (212) 295-5825
Fax: (718) 795-1642
wbrown@bkllawyers.com
akwon@bkllawyers.com
*Attorneys for Plaintiffs*

</div>

## CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

I, SALMA BAHAA HUSSEIN hereby consent to be a party plaintiff pursuant to 29 U.S.C. §
216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against
HOOTERS OF AMERICA LLC, FRESH MEADOWS WINGS LLC, FARMINGDALE WINGS
LLC d/b/a Hooters, and MARC PHANUEF and/or related entities and individuals to recover
unpaid wages, liquidated damages, and other damages and relief available under the Fair Labor
Standards Act.

DocuSigned by:

57E6E5DB8D52474

Name: _____

Date: 1/6/2024 _____

DocuSign Envelope ID: 90FE7A25-ABAB-4708-9BE4-4F7FB3750001

## CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

I, ALESSANDRA DARRIGO hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against HOOTERS OF AMERICA LLC, FRESH MEADOWS WINGS LLC, FARMINGDALE WINGS LLC d/b/a Hooters, and MARC PHANUEF and/or related entities and individuals to recover unpaid wages, liquidated damages, and other damages and relief available under the Fair Labor Standards Act.

Name: Alessandra Darrigo

Date: 1/5/2024

## CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

I, DANIELA ARIELLE DARRIGO hereby consent to be a party plaintiff pursuant to 29 U.S.C. §

216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against

HOOTERS OF AMERICA LLC, FRESH MEADOWS WINGS LLC, FARMINGDALE WINGS

LLC d/b/a Hooters, and MARC PHANUEF and/or related entities and individuals to recover

unpaid wages, liquidated damages, and other damages and relief available under the Fair Labor

Standards Act.


DocuSigned by:

_Daniela Darrigo_
BEDAE01AA3B8467
_____

Name:   Daniela Darrigo


Date: _____1/6/2024_____